2348-2

**JUDGE BUCHWALD**    07 CV 7160

**DEORCHIS WIENER & PARTNERS, LLP**
61 Broadway, 26th Floor
New York, New York 10006-2802
(212) 344-4700

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GETAX AUSTRALIA PTY., LTD.,

                                        Plaintiff,                    07 Civ.

                                                         **VERIFIED COMPLAINT
          - against -                            AND RULE B ATTACHMENT**

SWARUP GROUP OF INDUSTRIES,

                                        Defendant.
-------------------------------------------------------------X

RECEIVED
[ ]G 10 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff GETAX AUSTRALIA PTY., LTD., by its attorneys, DE ORCHIS WIENER & PARTNERS, LLP., as and for its Verified Complaint against Defendant SWARUP GROUP OF INDUSTRIES, alleges upon information and belief, as follows:

1. This is an admiralty and maritime claim with the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

2. Venue is proper under 28 U.S.C. §§ 1391 (d) because Defendant Swarup Group of Industries is an alien.

3. At and during all times hereinafter mentioned, Plaintiff GETAX AUSTRALIA PTY., LTD., (hereinafter referred to as "GETAX" or "plaintiff") was and still is, a corporation organized and existing under and by virtue of the laws of the Australia, with a principal place of business located at Level 8, Corporate Center, 2 Corporate Court, Bundall,

QLD 4217, Australia.    GETAX, at all times hereinafter mentioned, was engaged in the business of owning and/or operating vessels for profit in world wide trade and was the disponent owner of the m/v SEA SPIRIT K.

4.    Upon information and belief, Defendant Swarup Group of Industries is a corporation or other business entity incorporated under the laws of India or some other foreign country, with an office and place of business located at B-510 Crystal Plaza, New Link Road, Andheri (West), Mumbai 400 053, India, and was at all times hereinafter mentioned engaged in business, including the chartering of ocean going cargo vessels and was the charterer of the m/v SEA SPIRIT.

5.    Plaintiff GETAX, as desponent owner and Defendant Swarup entered into a charter party contract, dated at Sydney, Australia on September 6, 2004,  by which Swarup would have the use of GETAX's vessel SEA SPIRIT K, for the carriage of a cargo of iron ore fines from Visakhapatam, India to Tianjin, China, for an agreed upon charter hire.

6.    Pursuant to the said charter party contract, the SEA SPIRIT K arrived at the designated load port and tendered its notice of readiness to load cargo.    Contrary to its undertaking under the charter party contract, Swarup was unable to load the cargo within the time designated by the charter party contract for loading, through no fault of the plaintiff GETAX.

7.    As a result of the delay in loading the cargo, defendant became liable for the payment of demurrage pursuant to the terms of the charter party contract.

8.    Pursuant to the terms of the charter party contract, plaintiff GETAX demanded arbitration of the dispute under the auspices of the London Maritime Arbitration Association.

2

Prior to the submission of the points of claim to the arbitrator, plaintiff and defendant agreed to liquidate the amount of the claim. Defendant Swarup failed to effect payment of the liquidated amount and therefore, plaintiff GETAX proceeded with the arbitration of the underlying dispute.

9.    Arbitrator John Maskell issued an Award, published July 21, 2005 finding in favor of plaintiff GETAX. Arbitrator Maskell issued a further Award dated December 11, 2006 awarding plaintiff GETAX the amount of US$50,000.00 plus interest and costs. The arbitrator also awarded plaintiff GETAX an allowance towards its legal fees and expenses. The total due and owing to GETAX pursuant to the Awards is US$97,499.67 as of August 1, 2007. The interest awarded continues to accrue. (Annexed hereto as Exhibit 1 are the Arbitration Awards).

10.    A Certificate as to finality, etc., of Arbitration Award of Enforcement Abroad, pursuant to the English Arbitration Act of 1996, section 58, was issued by a Master of the Supreme Court of England and Wales, dated February 5, 2007. (Annexed hereto as Exhibit 2 is a copy of said certificate).

11.    Plaintiff GETAX, has fulfilled all conditions precedent and has made due demand upon defendant Swarup, for payment. Swarup has refused to pay any portion of the Arbitration Award.

## APPLICATION FOR ISSUANCE
## OF A RULE B ATTACHMENT

12.    Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

13.    The defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, defendant has, or will have during the pendency of this action, assets within this District which subjects defendant to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, HSBC (USA), Bank of America, Wachovia, Citibank, American Express Bank, J.P. Morgan Chase, Bank of New York, The Clearing House Interbank Payments System LLC, The New York Clearing House Association LLC, and/or Standard Chartered Bank, which are believed to be due and owing to the defendant.

14.    The Plaintiff seeks an Order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching any assets of the defendant held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the defendant, and to secure and/or satisfy the plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the defendant, citing defendant to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, HSBC (USA), Bank of America, Wachovia, Citibank, American Express Bank, J.P. Morgan Chase, Bank of New York, The Clearing House Interbank Payments System LLC, The New York Clearing House Association LLC, and/or Standard Chartered Bank, which are believed to be due and owing to the defendant Swarup in the amount of US$97,499.67 to satisfy and/or secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B to answer the matters alleged in the Complaint;

C.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

D.    That the plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
       August 10, 2007

                                      DEORCHIS WIENER & PARTNERS, LLP
                                      Attorneys for Plaintiff

                                      By:
                                         John A. Orzel (JO-2420)
                                         61 Broadway, 26th Floor
                                         New York, New York  10006-2802
                                         (212) 344-4700

## VERIFICATION

John A. Orzel declares and states that he is a partner in the law firm of DeOrchis, Wiener & Partners, LLP, attorneys for plaintiff in this action, and that the foregoing Verified Complaint is true to his knowledge, except as to matters therein stated on the information and belief and as to those matters, he believes them to be true; that the ground of his belief as to all matters not stated upon knowledge is information furnished to him to by Plaintiff; that the reason why the Verification is not made by plaintiff is that plaintiff is a corporation whose principal place of business is outside the New York County, and that due to the exigent nature of this proceeding it was not possible to obtain a Verification from plaintiff; and that he is authorized to so verify.

I declare and state under penalty of perjury that the foregoing is true and correct.

Executed on August 10, 2007

_____
John A. Orzel

6

# EXHIBIT 1

**To the Verified Complaint of**

**GETAX AUSTRALIA PTY., LTD.,**
**Against SWARUP GROUP OF INDUSTRIES**

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION


BETWEEN:-


GETAX AUSTRALIA PTY LIMITED                    Claimants
                                               Owners


and


SWARUP GROUP OF INDUSTRIES                     Respondents
                                               Charterers


## AWARD

"Sea Spirit K C/P 6th September 2004


WHEREAS:-

A. By a Charterparty dated 6th September 2004 on an amended Gencon Form, the
   vessel "Sea Spirit K" was chartered by Getax Australia Pty Limited
   (hereinafter called "the Owners") to Swarup Group of Industries (hereinafter
   called "the Charterers") for a voyage from India to China with a cargo of iron
   ore on the terms set out therein.

2

B. The Charterparty provided (inter alia) that if disputes arose they were to be decided by arbitration in London with English Law to apply.

C. Disputes did arise and on 23rd February 2005, I, John Maskell of Justice Wood, Wheelers Hill, Little Waltham, Essex CM3 3LY accepted appointment as sole arbitrator to hear and determine those disputes.

D. The parties were represented by solicitors in Australia and London who presented their clients' cases through written submissions.

E. Neither party requested an oral hearing and the Reasons for my Award are attached hereto and form part of this Award.

F. The seat of this arbitration is England.

NOW I, John Maskell, having taken upon myself the burden of this arbitration and having carefully and conscientiously considered the evidence and submissions of the parties DO HEREBY MAKE ISSUE AND PUBLISH this my Award as follows:-

1. The Owners are entitled to an award of US$50,000.

2. I HEREBY AWARD AND ADJUDGE that the Charterers shall forthwith pay to the Owners the sum of US$50,000 together with interest at the rate of 6% per annum compound from 8th November 2005 until the date of payment, such sum to be compounded with three monthly rests.

3. I FURTHER AWARD AND ADJUDGE the Charterers shall forthwith pay the sum of US$2,215 to cover the lost interest on the sum of US$80,000 from

8th May 2005 until 8th November 2005 together with interest at the rate of 6%

per annum compound from 8th November 2005 until the date of payment,

such sum to be compounded with three monthly rests.

4.   I FINALLY AWARD AND ADJUDGE that the Charterers shall bear their

own and the Owners' costs of the reference, such costs to be assessed by me

in the event of non-agreement and in respect of which I reserve my

jurisdiction together with the costs of this my Award which I fix in the sum of

£2600 PROVIDED ALWAYS that if the owners shall have paid for all or any

part of this my Award, they shall be entitled to immediate reimbursement

thereof, together with interest thereon at the rate of 6.5% per annum

compound from the date of this my Award until the date of reimbursement,

such sum to be compounded with three monthly rests.

Dated this 21st day of July 2005

John Maskell                                                    Witness

4

Reasons

for and forming part of the Award

1.  This arbitration falls into two distinct parts; the first relates to the question as to whether the arbitration proceedings that were commenced in February 2005 were concluded by a settlement agreement made in October 2005 and whether that agreement prevents the Owners from pursuing their claim in full. The second only arises, if the Owners are so entitled and requires a further examination the case.

2.  The facts of this case, with which I shall deal later, relate to a Charterparty which was performed in the autumn of 2004. Disputes arose under that contract and in February 2005, I was appointed arbitrator to resolve those disputes. After my appointment there were commercial attempts to settle the matter, but they were unsuccessful and in September the Owners presented a formal Statement of Claim in the sum of US$92,734 together with costs.

3.  This prompted further discussions which led to a fax being sent by the Owners' lawyers to the Charterers stating that if the Charterers would pay the sum of US$70,000 in three instalments, "they would stall the arbitration proceedings". On 11th October (wrongly dated 11th September) the Charterers acknowledged receipt of the proposal and said that they would pay the instalments as requested and stipulated that "on receipt of the said amount by your clients from us, your clients shall forthwith withdraw the Arbitration Proceedings against us". On 18th October the Owners' lawyers replied that if

5

the payments were made in accordance with the then agreed schedule, "our clients will forthwith withdraw the Arbitration Proceedings against you".

4. The Charterers made the first payment on time, but then failed to make any further payment. The Charterers eventually appointed English solicitors to handle their defence when the Owners resurrected the arbitration and one of the defences that they raised was that the Owners' claim should now be limited to $40,000 (ie $70,000-$30,000 already paid) plus interest and costs since the claim had been settled. The Owners maintained that they should be entitle to proceed with their original claim in full.

5. It is reasonably settled law that if two parties agree to settle a dispute, then if one party fails to comply with the terms of the agreement, it is normally the case that one can only sue on the basis of the terms of that agreement. In other words if the parties agree to settle a dispute of £200 for £100 and if the paying party fails to pay the £100, the only remedy for the is to go for summary judgement for that sum. That is clearly the basis of the decision in the case of Colchester Borough Council v Smith [1992] Ch 421. The parties also relied on the case of British Russian Gazette v Associated Newspapers [1933] 2 K.B. 616. The case covered a number of points, but it was the academic discussion of the doctrine of accord and satisfaction and consideration that is relevant to this matter. It appeared to be accepted, at least by the end of that case, that the doctrine of accord and satisfaction could apply to executory agreements as well as executed agreements. The Charterers maintained that the agreement here fell into the category of an executory promise and consequently, the

Owners could only bring a claim for the agreed sum, less anything that had already been paid. I can understand this argument if an agreement between two parties said, "if you pay me £100 at some time in the future out of my claim of £200, I will cease the arbitration proceedings now". If the payment had not made, then the plaintiff party could only claim for £100. However, in my opinion, it is always necessary to see what the agreement actually says. In this matter my reading of the exchange of correspondence is that the Owners said that they would accept a lesser sum than that claimed if that lesser sum was paid by instalments on certain dates. However, they made it clear, in my view, that the arbitration would not be discontinued until all instalments had been paid. Consequently, I consider that, as the Charterers did not comply with the terms of the agreement, the arbitration as it existed in October 2005 was revived and the Owners are entitled to proceed with the arbitration for the full claim.

6. It is, therefore necessary to look at the full facts and assess the Owners' claim for damages, if any. The Owners made a claim in October 2004 of $87,277.47 in respect of the balance of account in relation to the voyage that was carried out in September 2004. This figure was disputed by the Charterers and by January 2005, it became clear that the Charterers were not going to pay voluntarily. In February 2005, I accepted appointment as sole arbitrator in the reference, but at the same time, the parties, through their lawyers sought to settle the dispute amicably. On 23rd February the Charterers offered to settle the claim by the payment of 50% of the claim, but this offer was not acceptable to the Owners who countered on 16th March with an offer that a

figure of $80,000 (inclusive of interest and costs) would be acceptable. On 17th March, the Owners made it clear that they would regard the offer as withdrawn unless it was accepted by 24th March. No response was received by that date, so technically the offer lapsed. However, the parties did not seem to treat the offer as lapsed, since when on 28th March the Charterers made it clear that they would agree to settle for $80,000, the payment to be made by the end of April/beginning of May, this proposal was accepted by the Owners.

7. The Charterers did not make the relevant agreed payment by the due date and then in September 2005, the Owners put forward a full Statement of Claim. This has been mentioned earlier (Paragraph 2 hereof). The claim included interest in addition to the original claim set out in the balance of account of October 2004. I would have disallowed this interest claim as pleaded and substituted my own assessment of interest as this is within my discretion. There was, therefore, a claim of $87,277.47 plus interest and costs before me in September 2005.

8. Both parties have supplied me with submissions as to the correct amount of the balance, but I believe that these submissions are irrelevant. What seems clear to me is that this dispute was settled in April in the sum of $80,000. Unlike the settlement agreement of October 2005, no mention was made of the arbitration proceedings being revived in the event of non-payment or the fact that the full claim could be made and it appears to me that this settlement is along the lines of the settlement in the Colchester Borough Case. In other words by September 2005 when a formal Statement of Claim was made, all

that remained in dispute was the fact that the Charterers had not made the agreed payment by the first week of May. All other claims and defences had been comprised. Accordingly the most the Owners could claim was $80,000 plus interest from 8th May 2005 until the date of payment.

9.  It used to be thought that if there was no dispute as to amount and a party had not paid, then the remedy of the innocent party was to go to the Court, but that has been held not to be the case. I, therefore, have full jurisdiction over this matter and the award is easy to make. The Owners should have been paid $80,000 on 8th May 2005. They were not. They are entitled to interest on that sum from 8th May until 8th November 2005. Thereafter the Owners are entitled to an Award of $50,000 together with interest at the commercial rate of 6% per annum compounded with three monthly rests from 8th November 2005 until the date of payment. They are also entitled to costs.

10. It was also indicated to me that the Charterers had incurred Indian court costs in what was an alleged wrongful action in that country by the Owners and that they would seek to set off such sum against any sum which I so awarded. I have not made any decision in respect of this submission because it seems to me that whether the Charterers are entitled to any costs in respect of any proceedings in India is a matter for the relevant Indian Court and I do not have the necessary jurisdiction.

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN:-

GETAX AUSTRALIA PTY LIMITED                               Claimants
                                                           Owners

and

SWARUP GROUP OF INDUSTRIES                                Respondents
                                                           Charterers

AWARD ON COSTS

"Sea Spirit K" C/P 6th September 2004

WHEREAS:-

A. By an Award dated 21st July (to which I refer for its full terms and effects including definitions) I awarded the Owners the sum of US$50,000 together with interest and costs.

B. I reserved my jurisdiction to assess those costs in the event that the parties failed to agree and I was informed that agreement was impossible.

10

C   The Owners' solicitors submitted a Schedule amounting to Australian $46,927.06 which included disbursements of Aus$9,975.06 which related to Indian correspondents' fees for work done in India on behalf of the Owners.

D.  The Charterers' solicitors submitted Points of Dispute and a Reply was received from the Owners' solicitors.

E.  Neither party requested an oral hearing but the Reasons for my Award are attached hereto and form part of this Award.

F.  The seat of this arbitration is England.


NOW I, John Maskell, having taken upon myself the burden of this arbitration and having carefully and conscientiously considered the documents and submissions of the parties DO HEREBY MAKE ISSUE AND PUBLISH this my Award as follows:-

1.  The Owners are awarded the sum of Australian $31,597.17 and the sum of US$8,000

2.  I HEREBY AWARD AND ADJUDGE that the Charterers shall forthwith pay the sums above mentioned to the Owners together with interest at the rate of 7% per annum compound from 21st July 2006 until the date of payment, such sum to be compounded with three monthly rests.

3.  I FINALLY AWARD AND ADJUDGE that the Charterers shall bear the costs of this Award which amount to £2,200 PROVIDED ALWAYS that if the Owners shall have paid for all or any part of this Award they shall be entitled to immediate reimbursement thereof, together with interest at the rate

of 7% per annum compound from the date hereof until the date of payment, such sum to be compounded with three monthly rests.

DATED this 11th day of December 2006.


John Maskell

Witness

<u>Reasons</u>

for and forming part of the Award

"Sea Spirit K" C/P 4.9.04.

1. This arbitration did not, by today's standards, involve a very large sum of money. The Bill of Costs submitted come to almost one-third of the claim. The rules under which I am obliged to operate require the Owners to justify any claim for costs and if there is any doubt as to whether the costs were reasonably incurred or were reasonable in amount, then the doubt must resolved in favour of the paying party.

2. The Charterers object to the Owners' Bill in respect of one major item, namely the fees incurred by the Owners in respect of their Indian lawyers in taking Indian Court proceedings and in respect of negotiations that took place over a substantial period which were intended to settle the dispute. The actual amount of costs incurred by the Indian lawyers was in fact greater than the amount claimed in the bill of Costs, but the Owners' primary lawyers in Australia recognised that some of the work done was not in respect of the arbitration proceedings, but was involved in security matters. Costs in respect of that issue are a matter for the appropriate Indian Court to determine.

3. The primary question that I have to resolve is whether it was reasonable for the Owners' solicitors to employ Indian correspondents to carry out negotiations

with the Charterers to settle the dispute and whether those costs were costs in the arbitration. The normal rule is that where a foreign correspondent is employed to assist the primary lawyer, his costs are recoverable to the extent that they were doing work which the primary lawyer would have had to do in any event. I have examined the schedules prepared by the Australian lawyers and by the Indian lawyers and I observe that much of the work done was in respect of negotiations involved in trying to resolve the case without recourse to a full arbitration. The first question, therefore, is whether negotiations to resolve a dispute come within the phrase, "costs of the arbitration".

4.  The history of this matter does not show the Charterers in a very good light. The main issue that came before me in the arbitration was whether a settlement had been reach and if so, when. The behaviour of the Charterers was such as to drive the Owners and their legal advisers to distraction. Every reasonable attempt to settle by the Owners was met with prevarication by the Charterers and when an agreement was finally reached, the Charterers failed to honour it. I have never had to deal with the substantive merits of this matter, so it would be inappropriate for me to comment on the merits, but I feel that I am entitled to assume that the Owners' claim had substantial merit in view of the various agreements reached. Can costs incurred in trying to resolve matters be part of the costs of the arbitration? In my judgement they can. The first reason for this is that the judicial system in this country is designed in its rules to assist a party trying to settle matters and the promotion of dispute resolution by other means than courts or arbitrations is encouraged. Indeed in the CPR- Rule 44.5(3) one of the factors that the Courts may take into account in assessing costs is "the

*/4*

efforts made, if any, before and during the proceedings in order to resolve the dispute". Although arbitrators are not bound by the CPR, they are a very useful guide as to the way we should assess costs. In consequence I reject the Charterers' lawyers' submissions that costs involved in respect of negotiations are outside the scope of my powers to determine. Even without reference to the Court and its Rules, I have always considered that costs involved in settlement negotiations could be part of the costs of the arbitration. This is also the view of one of the authors of Harris, Planterose and Tecks in their useful work on the Arbitration Act 1996.

5.  The second question that follows from my decision is whether it is appropriate to have two solicitors involved in negotiations. In normal circumstances I would need some persuading, but this was not a normal case. I hope I am not being provocative by stating that it is reasonably well known that the enforcement of judgements or awards in India can be a somewhat lengthy process. In a small case like this, it was obviously sensible to try and resolve the matter amicably, if at all possible, and to this extent it was reasonable to have Indian correspondents to assist in this process as an Indian company might have more regard for an Indian lawyer in such negotiations than somebody from a foreign jurisdiction. The behaviour of the Charterers in failing to honour the agreements that even they say they reached and in failing to pay the amount due under my Award, shows that this was not an unreasonable decision.

15

6. However, in coming to this view I am conscious of the fact that it would have been possible to conduct the negotiations through one lawyer and to involve two was a luxury for which the Charterers should not pay in full. There were obviously areas where instructions were required and both sets of lawyers were necessary, but there was inevitably some duplication and while the conduct of the Charterers has brought an award of costs against them in respect of this area, it is appropriate to make some reduction. I think that the proper course to adopt is to allow Mulla and Mulla's costs in full and make a reduction in Ebsworth & Ebsworth's fees. This is no reflection on the work done by the respective firms, but it seems to me that this will achieve a fair result for the parties and comply with the principles of taxation under English Law. This will mean a reduction in the total profit costs claimed by Aus$4868.

7. The basis of this reduction is as follows. I have isolated from Ebsworth & Ebsworth's Schedule of Costs a figure of Aus$6,944, which could be said to relate to the settlement negotiations. I have made a reduction of two-thirds in this figure to allow for any duplication as I have already awarded Mulla & Mulla the fees in full. There were also a few other items, which I have deducted. Items 80-84 is one area where I feel the Charterers should not have to pay. Such a letter to the arbitrator was unnecessary. I had no desire to know the basis of any discussion involving a possible settlement and certainly not the amount involved. There are proper procedures for dealing with this. Items 98-103 fall into a similar category.

8.  There is one final point with which I must deal. The Charterers' solicitors have suggested that I should only award two-thirds of the Owners' solicitors' costs because that is the practice in London. I reject this submission since the rule is that a successful party may recover whatever is reasonable. There is no percentage mentioned. It often happens that there are items in a costs schedule which go beyond what a losing party should have to pay and I have given some examples here and made the appropriate deduction, but this was a case where the Charterers seem to have put every obstacle in the path of the Owners to make a recovery. Any additional costs that have been incurred in this matter are entirely due to the behaviour of the Charterers. The Charterers are not being penalised, but are just being asked to pay what was appropriate for the problems they caused and in respect of which they were unsuccessful.

9.  Accordingly, the Charterers have to pay Aus$31,597.17 and US$8,000 together with interest and they must bear the costs of this my Award. Appropriate interest has been awarded.

12

# EXHIBIT 2

**To the Verified Complaint of**

**GETAX AUSTRALIA PTY., LTD.,**
**Against SWARUP GROUP OF INDUSTRIES**



PF 166
Certificate as to finality, etc. of Arbitration Award of Enforcement Abroad
(Arbitration Act 1996, s.58)

In the matter of the Arbitration Act 1996

And

In the matter of an Arbitration between:

### GETAX AUSTRALIA PTY LIMITED

**Claimants/Owners**

And

### SWARUP GROUP OF INDUSTRIES

**Respondents/Charterers**

### "SEA SPIRIT K C/P 6TH SEPTEMBER 2004

I.....Paul Michael Miller......, a Master of Supreme Court of England and
Wales, hereby certify:-

1. That the Award made by Mr John Maskell and published on 21st July
   2005 (attached) is not subject to any appeal or to any application to remit
   or set it aside and that the time for any such appeal or application has
   expired.

2. That a further Award on Costs made by Mr John Maskell and published
   on 11 December 2006 (attached) is not subject to any appeal or to any
   application to remit or set it aside and that the time for any such appeal or
   application has expired.

3. That the awards are by virtue of the provisions of sub-section (1) of
   section 58 of the Arbitration Act 1996 final and binding on the parties and
   any persons claiming through or under them.

.......................................
(Signed)
a Master of the Supreme Court of England and Wales

Dated............05-02-07......................